IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CYNTHIA R. SUBLETT,

               Plaintiff,

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

CIVIL ACTION FILE NO.

1:09-CV-2302-JFK

### FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her applications for a period of disability and disability insurance benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Cynthia R. Sublett filed applications for a period of disability and disability insurance benefits on January 12, 2005. Plaintiff alleged that she became

disabled on July 3, 2003, due to scleroderma, fibromyalgia, Raynaud's phenomenon, and hypertension.  [Record ("R.") at 30, 69, 461].  Plaintiff alleges that she suffers from pain, swelling, ulcers, and a lack of circulation in her hands and feet, pain in her hips and ankles, daily bowel problems, and facial numbness and pain.  [R. at 469-72, 476-78].  After her applications were denied initially and on reconsideration, an administrative hearing was held on May 13, 2008. [R. at 458-86].  The Administrative Law Judge ("ALJ") issued a decision on July 14, 2008, denying the claimant's applications.  [R. at 19-28].  After the Appeals Council denied a request for review, the claimant filed a complaint in this court on August 21, 2009, seeking judicial review of the final decision.  [R. at 6-12; Doc. 1].  The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that claimant Cynthia Sublett has degenerative disc disease, scleroderma, and fibromyalgia.  [R. at 24].  Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. at 25].  The ALJ found that the claimant has the residual functional capacity to perform light

work with the following limitations:  she must avoid extreme cold, poor ventilation, extreme heat, wetness, and humidity; she must avoid concentrated exposure to fumes, dust, and gases; she cannot climb ladders, ropes, or scaffold; and she is limited to occasional stooping.  [R. at 25-26].  The ALJ found that Plaintiff could not perform her past relevant work, but he concluded that there were a significant number of jobs in the national economy which she was able to perform, such as office helper, marker II, and mail clerk.  [R. at 27-28].  Accordingly, Plaintiff was not under a disability at any relevant time.  [R. at 28].

The ALJ's decision [R. at 22-28] states the relevant facts of this case as modified herein as follows:

The record indicated that the claimant has a history of left leg pain and a bulging disc at L5-S1.  (Exhibit 1F, page 1).  Magnetic resonance imaging performed on August 4, 2005, showed decreased disc space height at L5-S1 and L1-2. (Exhibit 11F, page 2).  The claimant was said to have a small disc protrusion at T11-12 and a degenerative change at L5-S1.  She was diagnosed with chronic low back pain and stiffness, with only mild degenerative disc disease.  (Exhibit 5F, page 30).

On February 8, 2005, the claimant's diagnosis included chronic reflux, esophageal dysmotility secondary to scleroderma, and possible dysphagia.  (Exhibit

3F, page 2). The record indicated that the claimant had generalized aches and pains associated with fibromyalgia. (Exhibit 5F, page 40). She was diagnosed with diabetes mellitus on March 9, 2005. (Exhibit 6F, page 10). A letter dated April 14, 2005, stated that the claimant suffered from scleroderma, fibromyalgia, high blood pressure, and Raynaud's and that these impairments prevented her from standing, sitting, walking, lifting, and carrying or handling objects without pain. (Exhibit 6F, page 3). Dr. John Goldman stated that the claimant was unable to work because she could not sit or stand for long periods of time and also stated that the claimant had problems with fine movements. (Exhibit 11F, page 1).

On October 20, 2005, the claimant complained of intermittent numbness of the left and right sides of the face. (Exhibit 5F, page 29). The claimant was diagnosed with bilateral paresthesia, without pain, which was consistent with scleroderma associated trigeminal neuropathy and mild distal neuropathy. (Exhibit 5F, page 30). A treatment note dated November 2, 2005, indicated that the claimant's reflux was reasonably controlled with medication. (Exhibit 4F, page 5).

The claimant sought treatment on April 5, 2006, for fibromyalgia attacks; however, her examination on that day did not reveal any dire results. (Exhibit 15F, page 55). The claimant had full range of motion of the neck, shoulders, elbows, wrists,

4

hands, hips, knees, and ankles.  (Exhibit 15F, page 56).  Dr. Goldman stated that the claimant had a little pain with motion of the right shoulder, tightness in her fingers, and thickening in the knee.  (Exhibit 15F, pages 53 and 54).  The claimant was advised to exercise, lose weight, and take her blood pressure medication.  (Exhibit 15F, page 41).  The claimant's neuropathy was described as mild; and there was no mention that her paresthesia impacted any area of the body, aside from her face.  (Exhibit 5F, pages 29 and 30).

The claimant stated that her connective tissue disease keeps getting worse.  According to the claimant, her scleroderma has resulted in hardening and drying of the skin.  She said that she is always hurting because her immune system starts attacking the disease.  The claimant also reported that her esophagus muscles do not work and that she has to use fluids to get food down.  She said that she has to lie down for two hours in the afternoon.  She said that her fibromyalgia impacts her muscles, tendons, and ligaments and that trigger spots localize the pain.  According to the claimant, she cannot get out of bed when she has a flare up.  The ALJ noted that the record did not document frequent flare-ups of her fibromyalgia and that Dr. Goldman stated that the claimant did not have many trigger points.  The claimant stated that she was diagnosed with Raynaud's when she was fourteen or fifteen years old.  She has been able to work

5

in the past in spite of this impairment. While the claimant stated that her symptoms have worsened, there was no evidence of a marked downturn in her symptoms. She said that she had problems gripping. According to the claimant, she can sit an hour before she starts experiencing pain; she can walk to the mailbox and back; she cannot climb stairs; she cannot drive; she can stand fifteen minutes; and she said that she cannot lift a five pound bag of sugar.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering

6

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited. The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work. If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

7

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since July 3, 2003, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571, *et seq.*).

8

3.    The claimant has the following severe impairments: degenerative disc disease, scleroderma, and fibromyalgia (20 C.F.R. 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5.    The claimant has the residual functional capacity to perform light work, as defined in 20 C.F.R. 404.1567(b), with the following limitations:  she must avoid extreme cold, poor ventilation, extreme heat, wetness, and humidity; she must avoid concentrated exposure to fumes, dust, and gases; she cannot climb ladders, ropes, or scaffold; and she is limited to occasional stooping.

6.    The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.    The claimant was born on January 11, 1959, and was a younger individual, age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c) and 404.1566).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from July 3, 2003, through the date of the ALJ's decision (20 C.F.R. 404.1520(g)).

AO 72A

(Rev.8/82)

[R. at 24-28].

## V.    Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Cynthia Sublett has not engaged in substantial gainful activity since the alleged onset of disability on July 3, 2003. [R. at 24]. At the second step, the ALJ determined that the claimant has degenerative disc disease, scleroderma, and fibromyalgia. [R. at 24]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 25]. The ALJ found at the fourth step of the sequential evaluation that the claimant was unable to perform her past relevant work as a color printer operator (light, semi-skilled work). [R. at 27]. At the fifth step, the ALJ concluded that the claimant is able to perform other jobs that exist in significant numbers in the national economy, such as office helper (1,300,000 positions in the national economy), marker II (16,000 positions in the national economy), and mail clerk (137,000 positions in the national economy). [R. at 28]. Therefore, the claimant was not under a disability from July 3, 2003, the alleged onset date, through July 14, 2008, the date of the ALJ's decision. [Id.].

10

Plaintiff argues that substantial evidence does not support the ALJ's decision. [Doc. 11].  According to Plaintiff, the ALJ ignored the limitations imposed by her Raynaud's and failed to properly formulate the residual functional capacity ("RFC") assessment. [Doc. 11 at 13-16].  Plaintiff also contends that the ALJ erred in assessing her credibility with regard to her complaints of pain and fatigue and that the ALJ improperly discredited the opinion of her treating physicians.  [Doc. 11 at 16-22]. Finally, Plaintiff argues that the Appeals Council erred by not vacating the ALJ's decision after new evidence was submitted.  [Doc. 11 at 22-24].

**A.      Plaintiff's Raynaud's Disease**

The ALJ found that Plaintiff had severe impairments in the form of degenerative disc disease, scleroderma, and fibromyalgia.  [R. at 24].  Although Plaintiff was diagnosed with Raynaud's disease, the ALJ found that it was not a severe impairment. [R. at 25].  Plaintiff argues that this constituted error because it is inconsistent with the ALJ's own findings and is not supported by substantial evidence.

The record reveals that Dr. John Goldman, Plaintiff's treating rheumatologist, noted on numerous occasions in 2005, 2006, 2007, and 2008 that Plaintiff had cool

11

skin, purple hands and feet, and sclerodactyly.[1]  [R. at 272, 285, 330-33, 349-52, 357-62, 366-67].  Plaintiff was diagnosed with CREST Syndrome and Raynaud's disease, among other impairments.  [Id.].  CREST Syndrome is one subtype of scleroderma that results in the hardening of the skin and can also affect the digestive tract.  Mayo Clinic, http://www.mayoclinic.com/health/crest-syndrome/DS00580 (last visited Aug. 18, 2010).  With Raynaud's disease, "smaller arteries that supply blood to [the] skin narrow, [causing] limit[ed] blood circulation to affected areas" and causing "some areas of [the] body–such as [the] fingers, toes, tip of [the] nose and [the] ears – to feel numb and cool in response to cold temperatures or stress."   Mayo Clinic, http://www.mayoclinic.com/health/raynauds-disease/DS00433 (last visited Aug. 18, 2010).

Social Security regulations provide that an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."   20 C.F.R. §§ 404.1521(a), 416.921(a).  The Eleventh Circuit has stressed, "An impairment can be considered as not severe only if

---

[1]Sclerodactyly is "[l]ocalized thickening and tightness of the skin of the fingers or toes" and "commonly associated with atrophy of the underlying soft tissues." MedicineNet.com,  http://www.medterms.com/script/main/art.asp?articlekey=13572 (last visited Aug. 18, 2010).

AO 72A

(Rev.8/82)

it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Whether an impairment is severe is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); accord, Social Security Ruling ("SSR") 85-28.

In the present case, the ALJ stated in his decision, "The record did not contain evidence that the claimant's . . . Raynaud's imposed any significant limitations of functioning." [R. at 25]. As a result, the ALJ found that Plaintiff's Raynaud's disease was not a severe impairment. Plaintiff argues that the ALJ's finding was contradicted by other findings he made in his decision. The court agrees. Although the ALJ found that Plaintiff's Raynaud's was a non-severe impairment, he also found that she "may experience grip problems" caused by her Raynaud's and, therefore, "must avoid climbing ladders, ropes, and scaffolds." [R. at 27]. It is inconsistent for the ALJ to find that Plaintiff's Raynaud's is a non-severe impairment and, at the same time, find that this impairment might cause grip problems which result in functional limitations. Substantial evidence does not support the ALJ's findings on the severity of the claimant's Raynaud's disease.

13

The court also finds that substantial evidence does not support the ALJ's conclusion that the problems that Plaintiff may experience as a result of her Raynaud's could significantly limit her ability to climb ladders, ropes, and scaffolds but have no effect on her ability to handle or finger. [R. at 25-27]. This issue is significant because all three of the jobs that the ALJ found that Plaintiff could perform require at least frequent handling and two require frequent fingering. [R. at 28, 481-82; Doc. 11, Exs. A-C]. Plaintiff has also alleged and offered supporting evidence showing that the Raynaud's causes swelling and circulation problems in her feet which affects her ability to stand and walk. The Commissioner writes, "Although Plaintiff's Raynaud's *could* affect her ability to handle, finger, walk, or stand, the evidence of record did not show that Plaintiff's Raynaud's disease indeed caused limitations on Plaintiff's ability to stand, walk, finger or handle." [Doc. 14 at 4]. In support of this contention, the Commissioner cites some of the medical findings that were normal. [Doc. 14 at 4-6]. But as Plaintiff explains in her response brief, once a claimant has offered objective medical findings and a treating physician's diagnosis that support her subjective allegations, she is not also required to prove that she has never had any normal findings. [Doc. 15 at 1-2]. The record evidence supports Plaintiff's arguments on this issue.

14

Plaintiff testified that her Raynaud's causes her hands and feet to turn blue and numb with cold and that she experiences pain when sensation returns.  [R. at 473-77]. She also stated that due to poor circulation and swelling in her hands she is unable to write with a pen for long, hold a hairbrush or hair dryer, vacuum, or "open a jar that's [previously] been opened."  [Id.].  With regard to her feet, Plaintiff testified that due to the swelling and poor circulation in her feet, she is only able to stand for about fifteen minutes.  [R. at 473, 478].  The evidence reveals that there is consistency between Plaintiff's allegations, the diagnosis of Raynaud's, and the frequent treatment notes describing her sclerodactyly, cool skin, and purple hands and feet.  [R. at 272, 285, 330-33, 349-52, 357-62, 366-67, 473, 476-77].  Moreover, two of Plaintiff's treating physicians, Dr. Thompson and Dr. Goldman, a rheumatologist, opined that she is unable to work due in part to the fact that she has difficulty with fine movements and cannot lift, carry, handle objects, stand, or walk without pain.  [R. at 219, 272].  Given these facts, the undersigned concludes that substantial evidence does not support the ALJ's finding that Plaintiff's Raynaud's would affect her grip but not her ability to handle, finger, walk or stand.  [R. at 25-27].

For these reasons, the court **ORDERS** that the ALJ's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.  Upon remand, the ALJ

must reevaluate Plaintiff's Raynaud's disease in a manner consistent with the discussion *supra*.

### B.    RFC Assessment

Plaintiff next argues that the ALJ erred when he found that Plaintiff retained the RFC to perform light work with certain restrictions.  [Doc. 11 at 15-16; R. at 25-27]. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments. Along with [her] age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis v. Callahan,125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).  The RFC is a function-by-function assessment that is used at step four of the sequential evaluation to determine whether the claimant is able to perform her past relevant work and at step five to determine whether she is able to perform any other work.  SSR 96-8p.

Citing Social Security Ruling 96-8p, Plaintiff argues that the ALJ failed to adequately explain his RFC assessment and that he erred in determining Plaintiff's RFC because he did not complete a function-by-function analysis of Plaintiff's limitations. [Doc. 11 at 15-16].  The ALJ found that Plaintiff had the RFC to "perform

16

light work . . . with the following limitations: she must avoid extreme cold, poor ventilation, extreme heat, wetness, and humidity; she must avoid concentrated exposure to fumes, dust, and gases; she cannot climb ladders, ropes, or scaffolds; and she is limited to occasional stooping." [R. at 25-26]. The court concludes that the ALJ failed to apply the proper legal standards when he made the RFC determination.

The Commissioner contends that "SSR 96-8p does not require the ALJ to discuss all Plaintiff's abilities on a function-by-function basis." [Doc. 14 at 8]. But the clear language of the ruling states otherwise. Pursuant to SSR 96-8p, the ALJ is required to make an assessment of the claimant's exertional capacity with respect to her "remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling." SSR 96-8p. The ruling explicitly states that the ALJ must consider each function separately and provides an example: "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." SSR 96-8p. See Ivey v. Barnhart, 2001 WL 34043389, *2 (N.D. Tex. January 15, 2002) ("Not only does SSR 96-8p explicitly speak to the importance of considering these strength demands separately when deciding whether an individual can do past relevant work, but this approach is wholly consistent with the purpose of determining RFC – to assess an individual's ability to do sustained work-related physical activities in a work setting

17

on a regular and continuing basis."). Thus, pursuant to these provisions, the ALJ was required to "first determine the claimant's ability to sit, stand, walk, lift, carry, push and pull before assigning an exertional category, e.g., sedentary, light, medium, heavy." Lechner v. Barnhart, 321 F. Supp. 2d 1015, 1036 n.27 (E.D. Wis. 2004) (citing Gotz v. Barnhart, 207 F. Supp. 2d 886, 896 (E.D. Wis. 2002)).

The ALJ in the present case did not make a function-by-function assessment. Instead, as noted *supra*, the ALJ skipped this step and made a finding that Plaintiff had the residual functional capacity for light exertional work with certain limitations. [R. at 25-26]. This was erroneous. "At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." SSR 96-8p. When the ALJ determines at step five whether the claimant can perform other work, the RFC must be expressed in terms of an exertional category. "However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." SSR 96-8p. This is why "[i]nitial failure to consider an individual's ability to

18

perform the specific work-related functions could be critical to the outcome of a case." Id. The ALJ's failure to comply with the requirements of SSR 96-8p and complete a function-by-function assessment is another reason the ALJ's decision must be reversed and the case remanded for further proceedings.

### C. Remaining Issues

Plaintiff Sublett's final arguments are that the ALJ erred in evaluating her subjective complaints and improperly discredited the opinions of her treating physicians and that the Appeals Council erred by not vacating the ALJ's decision in light of the new evidence submitted to it. [Doc. 11 at 16-23]. Because remand is warranted for the reasons discussed *supra*, these arguments need not be addressed in depth. The court notes, however, that many of Plaintiff's arguments have merit.

Plaintiff argues that the ALJ did not consider the entire record and failed to articulate reasons supported by the record when he discredited Plaintiff's complaints of pain and fatigue. Where a claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony. See Viehman v. Schweiker, 679 F.2d 223 (11th Cir. 1982); Scharlow v. Schweiker, 655 F.2d 645 (5th Cir. 1981). If a claimant's

testimony is critical to the ALJ's determination, the ALJ must articulate any reasons for discrediting the claimant's testimony.  See Viehman, 679 F.2d at 228.

Social Security Ruling 96-7p provides that when making a credibility determination, the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms."  SSR 96-7p.  The ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id.  If the claimant's statements "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  Id.  The ruling also states:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give

20

the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p.   Factors that the ALJ must consider when making a credibility determination include:   the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and the individual's prior work record and efforts to work.  SSR 96-7p.

In the present case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity."  [R. at 26-27].  Many of the explanations offered by the ALJ for making the credibility determination were supported by the record.  For example, the ALJ noted that although Plaintiff was diagnosed with Raynaud's when she was

21

fourteen or fifteen years old, "she has been able to work in the past in spite of this impairment." [R. at 26]. The ALJ also cited to records showing that on some occasions Plaintiff had full range of motion in her joints. [R. at 25-26].

However, as Plaintiff notes, other explanations offered by the ALJ are not supported by the record. The ALJ repeatedly cited Dr. Goldman's finding that "the claimant did not have many trigger points." [R. at 25-26]. But the cited finding occurred on one occasion in April 2006 when Dr. Goldman noted that Plaintiff did "not have that many tender points today." [R. at 386]. At many other times, Dr. Goldman found that Plaintiff had numerous myofascial tender points. [R. at 298, 333, 351, 368]. The ALJ also wrote that treatment notes from Dr. Goldman stated that Plaintiff's pain was not severe, but the record reveals frequent complaints of moderate and severe pain in her hip, hand, fingers, wrists, neck, elbows, knees, and shoulders. [R. at 25, 330, 349, 357, 366, 389, 394].

Treatment notes also showed that Plaintiff consistently complained of fatigue. [R. at 202, 222, 330, 357, 366, 389, 394]. The Commissioner correctly notes that on at least one occasion Plaintiff denied fatigue.[2] [R. at 207]. But a notation showing that

---

[2]The Commissioner also cited to page 297 of the transcript in support of the contention that Plaintiff "denied fatigue on other occasions," but this page is almost completely blank and contains nothing about a denial of fatigue. [Doc. 14 at 15].

fatigue was not present at one time does not constitute substantial evidence to discredit Plaintiff's frequent allegations of fatigue.  And, in any case, this evidence was not cited by the ALJ because he offered no explanation for not finding Plaintiff's complaints credible.  This is significant because, as Plaintiff's attorney has noted, fatigue is a common symptom of both fibromyalgia and scleroderma, and the ALJ found that Plaintiff had both of these medical conditions and that they rose to the level of being severe impairments.  [Doc. 11 at 19; R. at 24].

Plaintiff next argues that the ALJ improperly discredited the opinions of her treating physicians.  Absent a showing of good cause to the contrary, opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner.  See Lewis, 125 F.3d at 1440; Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985).  Good cause has been found when the opinion of a treating physician is so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings.  See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Wilson v. Heckler, 734 F.2d 518 (5th Cir. 1984) (citing Warncke v. Harris, 619 F.2d 412, 417 (5th Cir. 1980)).  "The ALJ must clearly

23

articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440 (citing MacGregor, 786 F.2d at 1053).

In the present case, Dr. Goldman opined in August 2005 that Plaintiff was "unable to work because she is unable to sit for long periods of time and she is unable to stand for long periods of time." [R. at 272]. Dr. Goldman also found that Plaintiff had "difficulty with fine movements" and "numbness of the left side of her face." [Id.]. At the time Dr. Goldman issued his opinion, Plaintiff had been diagnosed by both Dr. Goldman and Dr. Tina Thompson, Plaintiff's primary care physician, with multiple medical conditions including scleroderma, fibromyalgia, high blood pressure, and Raynaud's. [R. at 219, 272]. In an opinion similar to Dr. Goldman's, Dr. Thompson concluded in April 2005 that Plaintiff was "significantly limited at work" because her impairments "prevent her from standing, sitting, walking, lifting, carrying or handling objects without pain." [R. at 219]. The ALJ considered the opinions of Drs. Goldman and Thompson but found "that there is no evidence to support the statement of total disability asserted in these early records." [R. at 24-25].

It is clear that the ALJ erred in concluding that there was "no evidence" supporting the opinions of Drs. Goldman and Thompson. In 2005, at the time these

24

treating physicians issued their opinions, Plaintiff was found to have sclerodactyly (thickening and tightness of the skin), CREST Scleroderma (hardening of the skin which can also affect the digestive tract), Raynaud's disease, fibromyalgia, multiple myofascial tender points, facial and leg numbness, L5-S1 broad based disc without impingement, decreased disc height at L5-S1, and a small disc protrusion at T11-T12. [R. at 272-73, 285]. As discussed *supra*, it is proper for an ALJ to reject the opinions of treating physicians when they are unsubstantiated by any clinical or laboratory findings. See Edwards, 937 F.2d at 583. But, here, the opinions of Drs. Goldman and Thompson were supported by a number of medical findings. The ALJ's assertion that these opinions had no supporting evidence was factually incorrect, and his decision to reject them on this basis was erroneous. Upon remand, if the ALJ again decides to reject the opinions of Plaintiff's treating physicians, he should articulate adequate reasons for doing so. Lewis, 125 F.3d at 1440.

Plaintiff's final argument is that the Appeals Council erred by not vacating the ALJ's decision in light of the new evidence submitted to it. [Doc. 11 at 22-23; R. at 402-58]. Plaintiff submitted, for example, an opinion from Dr. Goldman from September 2008 wherein he stated *inter alia*:

> She can stay on her feet no more than 15 minutes at a time, can stand or walk one hour during an eight hour day, and sit for 5 minutes at a time, and sit a total of two hours in the 8 hour day, and in an 8 hour day she can remain at her job sitting and standing without having her lie down for up to 3 hours.   She has limited ability to do simple grasping, fine manipulation, pushing and pulling arm controls, and pushing and pulling leg and foot controls.

[R. at 402-04].  Dr. Goldman also stated that Plaintiff "has been functioning at this level for two years."  [Id.].  Because remand is warranted for the reasons discussed *supra*, the undersigned need not address whether the Appeals Council erroneously failed to send the case back to the ALJ to consider the new evidence.  Upon remand, however, the ALJ should consider the new evidence submitted by Plaintiff.

## VI.   Conclusion

For the foregoing reasons and cited authority, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.   It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to 12 U.S.C. § 405(g) Sentence Four for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of the Plaintiff.

26

**IT IS FURTHER ORDERED** that, in the event that past due benefits are awarded to the Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 26th day of August, 2010.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

27